JOSEFA BOSCIO VIUDA DE VILÁ, demandante y apelante, *v.* ISABEL VILÁ MARTÍNEZ, demandada y apelada.

Núm. 9458.—*Sometido:* Junio 5, 1947. *Resuelto:* Julio 15, 1947.

*José Ruiz de Val,* abogado de la apelante; *Mariano Acosta Velarde,* abogado de la apelada.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Los hechos de este caso, según se exponen en la demanda, pueden resumirse así:

Por escritura núm. 63 de 18 de mayo de 1927, ante el notario Rodolfo Ramírez Pabón, la apelante y su esposo Luis Vilá Andino, adquirieron para la sociedad de gananciales, un solar radicado en Río Piedras. Posteriormente edificaron en el mismo una casa de concreto de dos plantas. Dos años después, por razones que no se exponen en la demanda, la apelante y su esposo simularon vender la casa y el solar a la hija de éste, Isabel Vilá Martínez, la apelada, por escritura núm. 1 de 17 de abril de 1929, ante el notario Agustina Cámara. Se consignó en la escritura como precio de venta la cantidad de $8,000, que confesaron la apelante y su esposo haber recibido de la supuesta compradora con anterioridad al otorgamiento de la escritura, asumiendo, además, la compradora, la obligación de pagar tres hipotecas que gravaban la finca por un valor total de $6,236. Los supuestos vendedores quedaron en posesión de la finca, ejecutando sobre ella actos de dominio, [1] entre ellos, una hipoteca que la apelante y su esposo constituyeron por escritura núm. 93 de 28 de marzo de 1936, ante el notario Rafael Buscaglia, a favor de "Home Owners Loan Corporation", en garantía de un préstamo por la cantidad de $5,475.85, pagadero en plazos mensuales, de acuerdo con las tablas de amortización de la acreedora. Con las rentas de la propiedad se han venido

---

[1] Como veremos más adelante, la supuesta compradora no inscribió su título en el Registro de la Propiedad hasta el 7 de febrero de 1938.

satisfaciendo dichos plazos y con el importe del préstamo antes mencionado, se cancelaron las tres hipotecas montantes a $6,236 que simuladamente asumió la demandada. Ni en la operación de hipoteca con la Home Owners Loan Corporation ni en las cancelaciones de las referidas tres hipotecas, intervino la demandada. Después de llevadas a cabo estas transacciones, allá para el 13 de enero de 1938, falleció Luis Vilá Andino, y el 7(2) del mes siguiente, la demandada presentó en el Registro la escritura que le habían otorgado nueve años antes su padre y su madrastra, inscribiéndose la finca a su favor al folio 25 del tomo 115 de Río Piedras, finca 4301, inscripción novena. Se alega, que la demandada se niega a reconocer a favor de la apelante su derecho a la mitad de la finca por concepto de gananciales, así como el usufructo viudal que le corresponde en la herencia de su finado esposo. Termina la demanda con súplica de que se dicte sentencia anulando la citada escritura de 17 de abril de 1929; que se cancele su inscripción en el Registro de la . Propiedad y que se declare por la sentencia que la apelante es dueña de un condominio sobre dicha finca, consistente en la mitad de la misma, por razón de gananciales, más su derecho al usufructo viudal.

En la contestación se niega que la venta fué simulada. Se acepta que la demandada no intervino en la transacción de la Home Owners Loan Corporation porque su escritura de venta no había sido inscrita todavía, porque su padre era más versado que ella en tales negocios y porque sus ocupaciones como maestra no le dejaban tiempo para ocuparse de ese negocio. Se niega que las tres hipotecas que la demandada asumió hubieran sido satisfechas con el préstamo que hiciera a Home Owners Loan Corporation y se alega que los plazos han venido pagándose por la demandada con su dinero. Por último, alega hallarse en posesión de la finca.

---

(2)En su contestación, la apelada alega que la escritura fué presentada al Registro el día 1ro. de febrero de 1938 e inscrita el día 7 del mismo mes.

Expuso como defensas que la demanda no aduce hechos constitutivos de causa de acción por hallarse ésta prescrita a tenor con los artículos 1228 y 1253 del Código Civil (ed. 1930), y que existe defecto de partes demandadas porque Luis Vilá Andino dejó, además de la demandada, otras dos hijas legítimas llamadas Pilar y María Cristina Vilá Martínez, quienes, de acuerdo con las alegaciones de la demanda, son partes necesarias en este pleito. Termina la contestación con súplica de que se declare sin lugar la demanda, pero que en el caso de resolverse que la finca no pertenece a la demandada, que se condene a la demandante a pagar las sumas de dinero pagadas por aquélla para liberar la finca, con costas, gastos y honorarios de abogado.

En el acto del juicio, al ser llamada la apelante como testigo y declarar que Luis Vilá Andino fué su esposo, la representación de la demandada alegó que siendo la demandante heredera de su esposo, toda vez que reclamaba el usufructo vidual, no podía ella declarar en este caso, e invocó la sección 3 de la Ley para prescribir quiénes son testigos hábiles, etc., aprobada el 10 de marzo de 1904[3] y el caso de *De la Rosa* v. *Sucn. Quevedo,* 47 D.P.R. 175.

La corte inferior llegó a la conclusión de que la demandante comparece en el presente caso como heredera de su esposo Luis Vilá Andino, con el propósito de anular un contrato de compraventa otorgado por ella y el difunto a favor de la demandada y que, por consiguiente, se trata de una acción entablada por un heredero, la cual tiene su origen en una transacción habida con el causante. Y como el abogado

[3] La sección 3 de la Ley para prescribir quiénes son testigos hábiles, etc., dice así:

"En las demandas por o en contra de los albaceas testamentarios, administradores o tutores en las cuales pueda dictarse sentencia a favor o en contra de ellos como tales, ninguna de las partes podrá declarar contra la otra en lo referente a transacciones con, o relaciones hechas por el testador, intestado o pupilo, a menos que fuere llamado a declarar por la parte contraria; y las prescripciones de esta sección se aplicarán a todas las demandas por o en contra de los herederos y representantes legales de un finado, que se suscitaren de transacciones habidas con éste."

de la demandante manifestó en el juicio que no contaba con otra evidencia para probar sus alegaciones, dictó sentencia declarando sin lugar la demanda, con costas a la demandante, más $150 por concepto de honorarios de abogado.

La Regla de Evidencia invocada por la apelada ha sido calificada por Wigmore como deplorable en todos sentidos, 2 Wigmore, *Evidence,* (3ra. ed. 1940) sección 578, y este Tribunal, abundando en esa opinión, se ha negado a extender la regla mediante interpretación judicial o a excluir testimonio·que no caiga claramente dentro de los términos del estatuto. *Viera* v. *Sucn. Goitía,* 60 D.P.R. 653; *Colón* v. *Sucn. Tristani,* 45 D.P.R. 227 y *Saunnion* v. *Díaz,* 29 D.P.R. 615.

Si examinamos la demanda del presente caso, veremos que si bien la demandante reclama su cuota vidual con respecto a la cual su derecho surge como heredera de su esposo, también reclama su mitad de gananciales, y en este último caso su reclamación es por derecho propio y no como heredera. Es incuestionable que si la demandante se hubiera limitado a reclamar su participación en la sociedad de gananciales, sin hacer reclamación por la cuota vidual, no existiría controversia alguna en cuanto a este punto, por no ser de aplicación entonces la sección 3. Eso hubiera podido hacerlo la demandante porque el derecho a reclamar sus gananciales y el de percibir la cuota vidual son derechos independientes y separables. Por consiguiente una enmienda a la demanda eliminando todo lo que se refiere al usufructo vidual dejaría el caso fuera de la prohibición de la sección 3, permitiendo hacer justicia sustancial, si es que los hechos alegados en la demanda son ciertos.

Arguye la demandada que, independientemente de la citada sección 3, la sentencia debe ser confirmada porque en la escritura de venta que se le otorgó, se hizo constar que ella se hacía cargo del pago de las tres hipotecas que por un valor de $6,236 gravaban la finca; y que habiéndose ya abonado, con las rentas de su casa, la cantidad de $760.15 para

la fecha en que se otorgó la escritura de hipoteca a favor de Home Owners Loan Corporation por $5,475.85, dichos $760.15 fueron satisfechos por ella, constituyendo ese pago suficiente causa pasa sostener la validez de la venta a su favor.

En la demanda se expone con toda claridad que la venta fué simulada. Por consiguiente, las cantidades pagadas con las rentas de la casa pertenecían a sus dueños, los supuestos vendedores, alegándose expresamente que dichos pagos fueron hechos por ellos y no por la demandada.

La defensa de prescripción invocada por la demandada carece de méritos. Un contrato simulado es inexistente, no se convalida por el transcurso del tiempo y la acción para que sea destruída la apariencia de obligación y contrato puede establecerse en cualquier tiempo. Manresa, Código Civil Español, (ed. 1901) t. 8, pág. 733.

Tendría razón la demandada en lo que respecta a su defensa de defecto de partes demandantes, si la demandante no eliminara de su demanda la reclamación del usufructo vidual. Eliminada dicha reclamación y no solicitándose entonces algo que pudiera corresponder a la demandante como herencia de su esposo, las otras hijas de éste no serían partes necesarias en el pleito.

*Por lo expuesto, procede dejar sin efecto la sentencia y devolver el caso a la corte inferior con instrucciones de permitir enmiendas a la demanda y continuar la tramitación del pleito en forma no inconsistente con los principios expuestos en esta opinión.*